# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

| | | |
|---|---|---|
| In re BOSS MANAGEMENT GROUP, INC., | ) ) ) | Case No. 05-61589-LYN |
| Debtor, | ) ) ) | |
| WILLIAM SCHNEIDER, Trustee, | ) ) | Adv. No. 06-06081 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| FABRIKO ACQUISITION CORP., and MID-WEST TEXTILES, INC. | ) ) ) | |
| Respondents, | ) ) | |
| FABRIKO ACQUISITION CORPORATION, | ) ) ) | |
| Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| ADVISCO CAPITAL CORPORATION and PHILIP A. NEWMAN, | ) ) ) | |
| Third Party Defendants, | ) ) ) | |

## MEMORANDUM and ORDER

This matter comes before Court after a trial between the plaintiff and the original defendants.

1

*Jurisdiction*

This Court has jurisdiction over this matter.  28 U.S.C. § 1334(a) & 157(a).  This adversary proceeding as initiated by the Original Complaint is a core proceeding.  28 U.S.C. § 157(b)(2)(A).  Accordingly, this Court may enter a final order.

*Facts*

In early 2000, United American Holdings, Inc., ("UAH") owned by William Wallis, sought to acquire a Wisconsin corporation[1], Fabriko, Inc.  In an effort to raise financing for the purchase UAH contact Philip Newman, who owned Advisco Capital Corporation, Inc., ("Advisco").  Mr. Newman suggested using an entity other than UAH to acquire Fabriko, Inc., because UAH was a chapter 11 debtor at the time.  Mr. Wallis solicited the assistance of Boss Management Group, Inc., ("Boss Management") with which UAH was currently trading.  Boss Management was owned by William Pugh.[2]

On March 12, 2001, Boss Management and Advisco entered into an agreement whereby Advisco would secure financing in the amount of $1,700,000.00 for Boss Management so that it could acquire Fabriko, Inc.[3]  In return for its services, Boss Management paid Advisco $10,000.00.[4]

Subsequently, Mr. Newman informed Mr. Wallis, and perhaps Mr. Pugh, that he did not

---

[1] Testimony of William Wallis, president of Boss Management at hearing held before this Court on February 8, 2006, p. 28, l. 21-25.  See Transcript at Docket no. 36 in Case no. 05-61589.  Also see Plaintiff's Exhibit L in this adversary proceeding.

[2] Testimony of William Wallis, president of Boss Management at hearing held on the trial in this adversary proceeding.  p. 27, l. 7 to p. 32 l. 17.  Also see Defendant's Exhibits 1 and 2.

[3] See Plaintiff's Exhibit G.

[4] See Plaintiff's Exhibit H and Defendant's Exhibit 4.

2

believe that he could arrange financing through Boss Management. He stated that it would be better if a new corporation were formed, one with no debt, for the purpose of acquiring Fabriko, Inc.[5] William Pugh formed Fabriko Acquisition Corporation, Inc., ("Fabriko Acquisition") on April 19, 2001,[6] for the purpose of acquiring Fabriko, Inc. Mr. Pugh held the stock in Fabriko Acquisition and Mr. Wallis was appointed its president. No agreement was made at that time for Fabriko Acquisition to pay Boss Management the $10,000.00 that it had previously paid Advisco. Mr. Wallis, who was an "employee of Pugh" at that time, testified that the reason no agreement or other document was made was that Mr. Pugh owned both Boss Management and Fabriko Acquisition.[7]

No financing was ever provided by Advisco. Fabriko Acquisition sought the financing elsewhere, secured it, and purchase the stock of Fabriko, Inc.,[8] for $1,500,000.00, all of which was financed.[9] The Acquisition closed on August 31, 2001.[10] Fabriko, Inc., moved to Virginia from Wisconsin and was eventually renamed Mid-West Textiles, Inc.

---

[5] Testimony of William Wallis, president of Boss Management at hearing held on the trial in this adversary proceeding, pp. 34 -35.

[6] See Defendant's Exhibit 5, Virginia State Corporation Commission Corporate Data Inquiry. Also see testimony of William Wallis, president of Boss Management at hearing held on the trial in this adversary proceeding, p. 76, l. 2-4.

[7] Testimony of William Wallis, president of Boss Management at hearing held on the trial in this adversary proceeding, p. 40 at 18 to p. 41 at 2.

[8] Testimony of William Wallis, president of Boss Management, at hearing held before this Court on February 8, 2006, p. 28, l. 1-18. See Transcript at Docket no. 36 in Case no. 05-61589. Also see Plaintiff's Exhibit L in this adversary proceeding.

[9] Testimony of William Wallis, president of Boss Management at hearing held on the trial in this adversary proceeding, p. 80, l. 4-14.

[10] Testimony of William Wallis, president of Boss Management at hearing held on the trial in this adversary proceeding, p. 68, l. 19-20.

3

Attempts by Mr. Wallis to obtain a refund from Advisco were unsuccessful. On September 9, 2002, Frank Brown, the Chief Financial officer of both Fabriko Acquisition and Fabriko, Inc.[11], sent a memorandum[12] to William Pugh who was then the owner and president of Boss Management.[13] The Memo read:

"Will,

Per our conversation, please find a check enclosed for $15,000 for final reimbursement of expenses associated with the Wisconsin transaction.

Included in this reimbursement is $5,000 for the legal retainer paid to Mr. Gary Bowman and $10,000 for the monies paid to Advisco Capital Corp.

According to our records, this is the final payment due to Boss Management in regard to this transaction.

Please feel free to call me with any questions.

Frank"

It is not clear whether Mr. Brown wrote the memo on behalf of Fabriko Acquisition or Fabriko, Inc., (or its successor Mid-West Textiles, Inc).[14] Accompanying the memo was a check in the amount of $15,000.00 drafted on the account of Fabriko, Inc.[15]

At this time, William Wallis was the president of Fabriko Acquisition and William Pugh

---

[11] Testimony of William Wallis, president of Boss Management, at hearing held on the trial in this adversary proceeding, p. 47 at 21-22. Also see Mr. Wallis' testimony at p. 89, l. 5-13.

[12] See Defendant's Exhibit 7.

[13] Testimony of William Wallis, president of Boss Management, at hearing held on the trial in this adversary proceeding, p. 48 at 23-24.

[14] Mr. Wallis testified that he did not know whether the check was written on behalf of Fabriko Acquisition or Fabriko, Inc. See his testimony, transcript of hearing held on the trial in this adversary proceeding, p. 90, l. 16 to p. 91, l. 12.

[15] See Defendant's Exhibit 7.

4

was the shareholder.[16]

In late 2003 or early 2004, Mr. Pugh decided to wind up the operations of Boss Management.   He left the company and William Wallis became president.   After that time, Boss Management ceased business operations.[17]  In or about 2004, William Wallis became the "owner" of Boss Management, Fabriko Acquisition, Fabriko, Inc., and Mid-West Textiles, Inc.

On April 25, 2005, Boss Management filed the above-styled chapter 7 petition, disclosing no assets in its original schedules.  At the first meeting of creditors, William Wallis, as president and owner of Boss Management, testified that it held no assets.  The first meeting of creditors was continued to June 10, 2005.

On July 1, 2005, Boss Management filed an amended Statement of Financial Affairs, in which it disclosed that it was the defendant in a Suit on Guarantee filed by Ellen M. Chelstrom in the Circuit Court of Green Lake County, Wisconsin.

On July 22, 2007, the chapter 7 trustee filed a no asset report.

On August 11, 2005, Fabriko Acquisition filed a Warrant in Debt[18] in the General District Court for the City of Roanoke, Virginia, against Mr. Newman and Advisco.  On or about August 17, 2007, Mr. Newman, who owned and controlled Advisco, contacted the chapter 7 trustee and disclosed that Fabriko Acquisition had sued him and Advisco seeking to recover $10,000.00 plus interest.  Mr. Newman also represented to the chapter 7 trustee that he (Mr. Newman) might owe

---

[16]    Testimony of William Wallis, president of Boss Management, at hearing held on the trial in this adversary proceeding, p. 50 at 9-18.

[17]    Testimony of William Wallis, president of Boss Management, at hearing held before this Court on February 8, 2006,  p. 36, l. 23 to p. 37, l. 8.  See Transcript at Docket no. 36 in Case no.  05-61589.  Also see Plaintiff's Exhibit L in this adversary proceeding.

[18]    The Warrant in Debt is admitted into evidence as Plaintiff's Exhibit D.

a debt to Boss Management.[19]

On August 24, 2005, the chapter 7 trustee received a facsimile transmission from counsel for Newman that included a copy of a letter that was, allegedly, sent to counsel for Fabriko Acquisition. Also on August 24, 2005, Boss Management filed an amended Schedule B in which it disclosed, for the first time, an asset described as an "interest in lawsuit against Phillip Newman and Advisco Cap Corp. to collect debt owed to Boss Management Corp., Fabriko Acquisition Corp., and Fabriko, Inc." ("the Claim Against Advisco").

Also on August 24, 2005, Boss Management filed a motion seeking a determination (1) whether the chapter 7 trustee had settled the claim of Boss Management against Newman and Advisco; (2) whether the chapter 7 trustee had settled the claim of Fabriko Acquisition against Newman and Advisco; (3) whether the chapter 7 trustee would pursue the claim of Boss Management against Newman and Advisco; and (4) whether Fabriko Acquisition's claim against Newman and Advisco was an asset of the estate and whether the chapter 7 trustee would pursue it.[20]

On August 31, 2005, the chapter 7 trustee filed a Request for Asset Notice based on the possible claim by the estate against Mr. Newman and Advisco. On December 30, 2006, the chapter 7 trustee filed a motion to compromise the claim against Mr. Newman and Advisco for a payment of approximately $4,600.00. The payment has been made and the chapter 7 trustee has the funds in his possession.

On January 13, 2006, Boss Management filed an objection on the grounds that the trustee

---

[19] A correspondence from Newman to the chapter 7 trustee, dated August 17, 2007, is admitted into evidence as Plaintiff's Exhibit E.

[20] See Docket no. 17. Also see Plaintiff's Exhibit K.

had not investigated the alleged bases for offsets from the $10,000.00 claimed by Mr. Newman and Advisco. The chapter 7 trustee withdrew the motion to compromise when Fabriko Acquisition asserted that it owned the claim against Newman and Advisco.

On March 14, 2007, the Debtor filed a second amended Schedule B. Item 20 therein provided that:

> Interest in lawsuit against Philip Newman and Advisco Capital to collect debt owed to Boss Management Group, Fabriko Acquisition Corporation, and Fabriko, Inc. (as has been stated in court proceedings related to this lawsuit, Fabriko Acquisition Corporation claims ownership of the right to pursue the lawsuit and Philip Newman claims that the right to pursue the lawsuit belongs only to Boss Management Group)[21]

The chapter 7 trustee filed a complaint ("the Original Complaint") initiating the above-styled adversary proceeding against Advisco Cap Corp. ("Advisco") to collect the Claim Against Advisco. The parties reached a compromise agreement.

At the hearing on the chapter 7 trustee's motion to approve the compromise, Fabriko Acquisition Corporation ("Fabriko Acquisition") objected to the compromise on the grounds that it, not Boss Management, was the proper owner of the Claim Against Advisco. On August 28, 2006, the chapter 7 trustee, in response to Fabriko Acquisition's objection, filed the above-styled complaint seeking a judgment declaring whether the Claim Against Advisco belonged to the estate of Boss Management, or to Fabriko Acquisition, or to Mid-West Textiles, Inc., (Mid-West"). Although Fabriko Acquisition was named as a defendant in the Original Complaint, the trustee did not seek damages against Fabriko Acquisition or seek to compel Fabriko Acquisition to turn over property of any kind.

On September 26, 2006, Fabriko Acquisition filed a pleading styled as the Third Party

---

[21] See Docket No. 47.

Complaint against Advisco and Mr. Newman asserting causes of action sounding in the common count of quantum meruit and violations of 18 U.S.C. § 1961, et.seq., ("the RICO Claim").  This Court dismissed the Third Party Complaint with prejudice.  A trial was held on the claims asserted in the original complaint

## *Discussion*

Despite the seeming complexity of the foregoing, the essential facts are these.  On March 12, 2001, Boss Management, at the initiation of William Wallis and William Pugh, paid Advisco $10,000.00 to obtain financing to purchase Fabriko, Inc.  On April 19, 2001, at the behest of Advisco, Fabriko Acquisition was formed to acquire Fabriko, Inc.  On August 31, 2001, Fabriko Acquisition obtained Fabriko, Inc.  Thereafter, Fabriko, Inc., moved to Virginia from Wisconsin and was eventually reincorporated as Mid-West Textiles, Inc.

Any claim against Advisco was originally held by the Debtor because it was the Debtor who contracted with Advisco and it was the Debtor who paid Advisco the original $10,000.00 fee.

Attempts by Mr. Wallis to obtain a refund from Advisco were unsuccessful, resulting in the Alleged Claim Against Advisco.  On September 9, 2002, a check was drawn on the account of Fabriko, Inc. in the amount of $15,000.00.  Of that amount, $10,000.00 was meant to "reimburse" Boss Management for the payment to Advisco.  It is not clear from the Memo or from any testimony whether Mr. Brown wrote the memo on behalf of Fabriko Acquisition or Fabriko, Inc.[22]

---

[22] Mr. Wallis testified that he did not know whether the check was written on behalf of Fabriko Acquisition or Fabriko, Inc.  See his testimony, transcript of hearing held on the trial in this adversary proceeding, p. 90, l. 16 to p. 91, l. 12.  At this time, William Wallis was the president of Fabriko Acquisition and William Pugh was the shareholder.  Testimony of William Wallis, president of Boss Management, at hearing held on the trial in this

The question is who owned the claim, if any, against Advisco ("the Alleged Claim Against Advisco") on the date that the Debtor filed the instant petition? Did the Debtor assign the Alleged Claim Against Advisco to another entity? An assignment is a contract by which one party promises to transfer a right. The validity of the assignment is determined in the same manner that the validity of a contract is determined.

In order to analyze the formation of a contract it is necessary to determine the time of formation. The Memo refers to the $10,000.00 payment from Fabriko, Inc., to the Debtor as a "reimbursement." Mr. Wallis testified that the Debtor paid Advisco the $10,000.00 fee "on behalf of Fabriko Acquisition Corporation" and that Fabriko Acquisition Corporation "had the debt on its books for the $10,000 from Newman."[23]

Based on the language in the Memo and Mr. Wallis' testimony, one would conclude that the Debtor paid Advisco the $10,000.00 on March 12, 2001, on behalf of Fabriko Acquisition. In essence, it is asserted that the Debtor and Fabriko Acquisition agreed that the Debtor would pay Advisco and Fabriko Acquisition would pay, or reimburse, the Debtor. The problem is that one element of a valid contract is the competence of the parties. Adams v.Hazen, 123 VA. 304, 96 S.E. 741 (1918). (Competent parties are an essential element of a valid executory contract.).

---

adversary proceeding, p. 50 at 9-18.

[23] THE COURT: Why did you switch from the company that gave him the money to Fabriko?
THE WITNESS [Mr. Wallis]: Because the company that gave him the money was actually giving him the money on behalf of Fabriko Acquisition Corporation and required Fabriko Acquisition Corporation to pay back the money it had borrowed to pay him. That's what the check is.
That Boss Management gave him the money on behalf of FABRIKO ACQUISITION CORPORATION and then demanded the money back from FABRIKO ACQUISITION CORPORATION and had received it back from FABRIKO ACQUISITION CORPORATION four years earlier, three years earlier. So FABRIKO ACQUISITION CORPORATION was the one that had the debt on its books for the $10,000 from Newman.

Question from the Court and testimony of William Wallis, president of Boss Management, at hearing held on the trial in this adversary proceeding, p. 47 at 21-22.

9

The time of the execution of a contract is the point of time to be considered in determining the capacity of the person making a contract.  <u>Schultz v. Wills</u>, 126 Bankr. 489 (Bankr. E.D.Va. 1991).  At the time that the Debtor paid Advisco, Fabriko Acquisition did not exist.  It was not a competent party.  No valid contract could have been formed at that time.

The issue then becomes whether the Alleged Claim Against Advisco was transferred from the Debtor to some other entity after the Debtor paid the $10,000.00 fee.  Any assignment of the Alleged Claim Against Advisco must meet the requirements of contract formation.  "A contract . . . must contain all the essential elements of a valid executory contract, that is to say, competent parties, legal subject matter, valuable consideration and mutual assent."  <u>Adams v. Hazen</u>, 123 VA. 304, 96 S.E. 741, 745 (1918).    There is no evidence that the subject matter of any assignment was not legal.

In order to determine whether a contract was formed, we must first determine the identification and competency of the parties.  Frank Brown worked for both Fabriko, Inc., and Fabriko Acquisition a the time in question.  The letterhead on the Memo simply said "Fabriko", a trade name.   But the check that was drafted pursuant to the Memo was drawn on an account belonging Fabriko, Inc.  The parties to any assignment of the Alleged Claim Against Advisco must have been made by Fabriko, Inc., and the Debtor.

Next, we consider whether each party provided consideration.  William Pugh on behalf of Fabriko, Inc., stated:

> Per our conversation, please find a check enclosed for $15,000 for final reimbursement of expenses associated with the Wisconsin transaction.  Included in this reimbursement is $5,000 for the legal retainer paid to Mr. Gary Bowman and $10,000 for the monies paid to Advisco Capital Corp.

This is not the contract.   It is, however, in conjunction with the payment of $10,000.00 by

Fabriko, Inc., to the Debtor, evidence that the parties had previously entered into a verbal agreement by which Fabriko, Inc., promised to pay the Debtor $10,000.00 in return for the right to the Alleged Claim Against Advisco.

Nor is the use of the term "reimbursement" fatal to the formation. Under Virginia law, the cardinal rule applied in the construction of contracts is that the intention of the parties controls. Paul v. Paul, 214 Va. 651, 203 S.E.2d 123, 125 (1974). The evidence clearly indicates that it was the intent of the parties that Fabriko, Inc., pay the Debtor $10,000.00 and that the Alleged Claim Against Advisco be transferred to Fabriko, Inc.

### *Conclusion*

The Alleged Claim Against Advisco was transferred from the Debtor to Fabriko, Inc., for good consideration on or about September 9, 2002. The Alleged Claim Against Advisco is not, and never has been property of this bankruptcy estate. The chapter 7 trustee may abandon any interest that the estate may have in this claim.

An appropriate judgment shall issue.

Upon entry of this Memorandum, the Clerk shall forward copies to R. Mitchell Garbee, Esq., and Andrew Lyerly Ridenour, Esq., counsel for Advisco Capital Corporation and Phillip A. Newman, William F. Schneider, Esq., the chapter 7 trustee, and Gary M. Bowman, Esq., counsel for Fabriko Acquisitions Corporation and Mid-West Textiles, Inc.

Entered on this __11th__ day of December, 2007.

/s/ William E. Anderson
_____
William E. Anderson
United States Bankruptcy Judge

11